# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

01 JUL -9 PM 4:10

| | |
|---|---|
| **MARX ANGELO TRICE,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-00-N-1629-S |
| **CONTINENTAL GRAIN COMPANY,** | ] |
| Defendant(s). | ] |



ENTERED
JUL 0 9 2001

### Memorandum of Opinion

## I. Introduction

In this employment discrimination action, the *pro se* plaintiff, Marx Angelo Trice ("Trice"), alleges that his former employer, Continental Grain Company d/b/a Wayne Farms ("Wayne Farms"), violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by discriminating against him on the basis of his status as a work release inmate.

This matter is presently before the court on defendant's motion for summary judgment, filed on February 27, 2001 (Doc. #28). After careful consideration of the arguments of the parties, the relevant law, and the record as a whole, the court finds that the motion for summary judgment is due to be granted in all respects.



## II.   Statement of Facts[1]

From July 10, 1999 to September 27, 1999, Trice, an inmate then participating in the Alabama Department of Corrections work release program, worked at the Wayne Farms processing facility in Elba, Alabama. According to Trice, roughly two weeks after his employment commenced, the repetitive nature of his job caused him to experience pain, numbness and cramping in his right hand. Trice visited the company nurse, Twyler Ellis ("Ellis"), who gave Trice two aspirin and advised him to purchase some "Flexall" at the local drug store. Trice maintains that, because of his status as a work release inmate, Ellis treated him unfairly by, *inter alia*, altering the duration of his medical visit(s) on his company time card in an effort to make him late returning to his post, threatening to send him back to the camp for refusing to work with pain, and giving regular employees (non work release employees) preferential treatment. (Def. Ex A, Trice Depo. at pp. 41-46). This conduct, according to Trice, was not limited to personnel in the defendant's medical division. For instance, in his deposition testimony, Trice stated:

> [W]e [work release inmates] were just treated differently because the people that worked there, mainly the supervisors and most of them were women, know that they could control us with a threat of I will call the camp or I'll have you sent back to the camp and, you know, each inmate knows that if that does happen, then, you know, you're subject to being sent back to an institution, so-called behind the fence, and that was used to kind of intimidate the inmates . . . .

(Def. Ex. A, Trice Depo. at p. 37).

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

According to Trice, throughout June and July, he continued to experience numbness in his left hand as well as pain in his arms and shoulders. He complained to his supervisor, Vanessa Mack ("Mack"), who referred him to Ellis, the company nurse. Ellis allegedly advised Trice that if he wanted to be evaluated by a physician he would have to coordinate the visits through the safety manager, Tybo Sipper ("Sipper"). According to Trice, Sipper failed to respond to his numerous phone calls and messages.

On August 23, Trice advised Mack that he was in pain and could not continue to work his shift. Mack, once again, referred Trice to the company nurse, but advised him that leaving his post would cost him two points. Ellis, in turn, called Lee Hix ("Hix"), the superintendent on duty, to discuss Trice's situation. According to Trice, Ellis intentionally distorted the facts and circumstances surrounding his injury/illness so as to give Hix the impression that he was faking his illness or otherwise unwilling to work. Hix advised Trice not to return to work until he had a doctor's release. Trice received the release and returned to work two days later, August 25, 1999.

In addition to his allegations of disparate medical treatment, Trice testified that he was exposed to sexually inappropriate comments and gestures. Specifically, he contends that Mack, his supervisor, danced in a sexually-explicit way in front of him and rubbed her breast against some of his co-workers. According to Trice, Mack also made comments like "what are you going to do tonight when you get back to the camp?" and "what do you do at night when you are at the camp?" (Def. Ex. A, Trice Depo. at pp. 133-134).

Due to his alleged differential treatment, Trice filed a written internal complaint with defendant's human resources department on September 12, 1999. In connection with his

3

complaint, Trice met several times with Joe Drain ("Drain"), a human resources regional manager. After investigating Trice's complaint, Drain concluded as follows:

> I could not substantiate the allegations that you made concerning the treatment of work release employees. I was able to determine that your medical case was handled inappropriately, not because of your status as work release, but the medical protocol was not followed for yourself as well as other employees seeking doctor visits.

(Def. Ex. A, Trice Depo. at ex. 14). Trice then signed a form wherein he indicated that he was satisfied with the investigation conduced by the defendant. On September 27, 1999, roughly fourteen weeks after his employment commenced Trice resigned from his post with Wayne Farms.

Trice filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 10, 2000, alleging he "was discriminated against because of . . . [his] status (work release) . . . [e]mployees other than those on work release were treated more favorable." (Def. Ex. A, at ex. 1). On or about March 10, 2000, the EEOC sent Trice his Notice of Right to Sue. He commenced this action on June 13, 2000, seeking redress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII").

## III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party

asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility

6

determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

The court has given the plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. #38). Therefore, the notice requirements set forth in *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

### IV. Discussion

Title VII prohibits employment discrimination on the basis of "*race, color, religion, sex*, or *national origin*." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). This prohibition includes creating a hostile work environment or treating employees differently based on the five factors. Similarly, Title VII also expressly provides that "[i]t shall be an unlawful employment practice for an employer . . . otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, *because of* such individual's *race, color, religion, sex*, or *national origin*." *Id*. (emphasis added).

In his charge with the EEOC, Trice maintains that he was mistreated and denied medical treatment because of his status as a work release inmate. He makes similar allegations in the internal complaint filed with the defendant's human resources department as well as in the complaint filed with this court. Again, when asked in his deposition

7

whether his claim of disparate treatment was premised upon his work release status, Trice responded "[y]es, sir, that's correct" and subsequently explained that "[work release employees] were just treated differently because the people that worked there . . . knew that they could control us with a threat of I will call the camp or I'll have you sent back to the camp." (Def. Ex. A, Trice Depo. at pp. 35-36). Moreover a close examination of Trice's claim of hostile work environment harassment[2] suggests that, although he may have found his supervisor's alleged taunting and dirty dancing "offensive," he did so because work release inmates would be reprimanded for engaging in such conduct, not because it created an abusive environment on the basis of sex. (Def. Ex. A, Trice Depo. p. 12).

For the reasons described above, Trice is clearly seeking redress for alleged disparate treatment in the workplace on the basis of his status as a work release inmate.[3] Therefore, although each and every allegation of the complaint may indeed be true, Title VII simply provides no cognizable basis for relief. Again, Title VII prohibits "discriminat[ion] . . . because of . . . race, color, religion, or national origin" in the "terms" or "conditions" of employment. 42 U.S.C. § 2000e-2(a)(1). As the Eleventh Circuit has made clear, "Title VII addresses discrimination . . ." on the basis of the five protected

---

[2] The court also notes that Trice's claim of hostile work environment harassment is absent from the charge of discrimination filed with the EEOC. It is well settled that a Title VII plaintiff cannot bring claims that would not "reasonably be expected to grow out of the charge of discrimination." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Turner v. Orr*, 804 F.2d 1223, 1226 (11th Cir. 1986). In his EEOC charge, Trice alleges he was denied medical treatment on the basis of his status as a work release inmate. Accordingly, to the extent the complaint could be construed to allege a hostile work environment on the basis of gender, the court is convinced that Trice has waived such a claim by failing to include it in his charge with the EEOC.

[3] The plaintiff concedes as much in his responsive submission wherein he completely fails to address defendant's contention that work release status is not a protected category under Title VII.

factors; it "is not a shield against harsh treatment in the workplace." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). Accordingly, the motion for summary judgment will be granted in favor of the defendant.[4]

## V.   Conclusion

The court will enter an appropriate order in conformity with this memorandum opinion granting the defendant's motion for summary judgment in all respects.

Done, this 9th of July, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[4] Although not necessary to the conclusion reached above, the defendants correctly point out that, even if work release status were a protected category under Title VII, the plaintiff could not make out a *prima facie* case of discrimination because he failed to allege, much less prove, that he suffered an objectively adverse employment action. *See Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). Indeed, he voluntarily resigned his employment with defendant after his release from prison.